CALDWELL *v.* NASHVILLE INTERURBAN RAILWAY Co. *et al.*

(*Nashville.*   December Term, 1913.)

**INJUNCTION.   Contempt.**

Where a temporary injunction issued to restrain a railroad company from condemning a right of way immediately in front of complainant's residence was dismissed on stipulation, which provided that both parties should apply for a dismissal, and that the road should be constructed in a certain manner, and the trains operated at less than a certain rate of speed, the officers of the railroad company cannot be proceeded against as for contempt for violation of the injunction because they operated the trains at a greater rate of speed.   (*Post, pp.* 698-704.)

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County to the Court of Civil Appeals and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—JOHN ALLISON, Chancellor.

WM. HUME, JR., for Caldwell.

JNO. A. PITTS, for Nashville Interurban Ry. Co.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The complainant, Caldwell, filed a petition in this case in the chancery court of Davidson county against J. H. Carpenter, president, and Meade Frierson, man-

ager of the Nashville Interurban Railroad, seeking to attach them for contempt for violating a perpetual injunction claimed to have been awarded by the final decree in the principal case. The petition was demurred to, and the chancellor overruled the demurrer, but allowed an appeal to the Court of Civil Appeals before final judgment, where his decree was affirmed. The case is before us for writs of *certiorari* to the decree of that court, and has been argued at the bar.

The facts necessary to be stated are as follows:

The Interurban Railway, a Tennessee corporation, was organized to construct and build a line of railroad from Nashville to Franklin, Tenn., and was about to enter upon the premises of the complainant, Caldwell, for the purpose of locating its line of road. In 1908 Caldwell filed the original bill in the chancery court of Davidson county against the railway, and alleged that it had filed its petition in the circuit court of Davidson county against him seeking to condemn a right of way through two certain tracts of land, title to which was in the complainant, one tract containing about 167 acres and situated four miles south of the city of Nashville. This tract is complainant's home tract, and is known as Longview. The bill stated that the defendant railway sought to condemn a strip of land through Longview 1,724 feet long and twenty feet wide, that extended in front of the residence, and between it and the Franklin turnpike, and on the inside of a handsome and expensive stone wall which Caldwell had constructed in front of his residence, between

Caldwell v. Railroad.

it and the turnpike. It was charged that to so locate the right of way of the defendant would destroy the beauty of this valuable residence property and would greatly endanger the occupants of the place in going and coming from the residence. It was also charged that there were no engineering difficulties in the way of locating defendant's road on the opposite of the turnpike from the residence and improvements, but that the defendant had capriciously located its right of way next to complainant's residence and inside of the grounds, and between the stone wall and the residence, because of an agreement to so locate it which the defendant had entered into with a landowner on the opposite side of the turnpike from complainant.

It was further shown that, if it should be necessary to locate the railroad on the side of the turnpike on which complainant lived, there was no reason why the right of way for the railroad should not be on the right of way of the turnpike, and on the outside of complainant's inclosures. In addition, it was charged that the location of the railroad over and along Longview as proposed by the defendant was not in good faith, but in disregard of complainant's rights.

This bill also charged that there was no public necessity for the defendant's railroad, because the country which it was proposed to traverse by it was already adequately supplied by a line of the Louisville & Nashville Railroad Company, which extended along the line of the defendant, and practically parallel with it. And, in addition, that there was a turnpike extend-

ing along the same route which together with the line of the L. & N. R. R. Co., made adequate facilities for the traveling public.

It was prayed that a writ of injunction issue to restrain defendant from prosecuting its condemnation proceedings, and from entering upon complainant's land and locating and constructing its proposed line of road over his lands, as sought in the condemnation suit. This bill was answered, and the chancellor heard the complainant's motion for an injunction upon bill and exhibits, and the answer and its exhibits, together with an affidavit and the argument of counsel, when the chancellor granted the injunction upon full hearing. There was a demurrer to the original bill which the chancellor overruled, and granted the defendant an appeal to the Supreme Court from his action in overruling the demurrer, but, after the appeal had been prayed, but before it was perfected, the parties compromised, and settled their differences by two written agreements, which were made the decree of the court in the principal case, and it is this decree which it is claimed awarded the perpetual injunction, for violating which the defendants have been attached. The parts of the compromise agreement which made the decree of the chancery court material to this investigation are as follows:

"JAMES E. CALDWELL v. NASHVILLE INTERURBAN RAIL-
WAY.

"This cause came on this day to be heard upon the
following stipulations of the parties, namely:    This
agreement, made and entered into on this the 15th
day of October, 1908, by and between the Nashville
Interurban Railway Company, party of the first part;
and James E. Caldwell, individually and as trustee for
his wife and children, parties of the second part, wit-
nesseth:

"The parties of the second part agree that the party
of the first part may construct a single track electric
railway in front of the premises of the second parties
on the Franklin road known as Longview, in the fol-
lowing manner, and on the following terms:

"(1)    The track is to be laid as near to the western
margin of the macadamized road, and as far from the
stone fence on the margin of said property as may
be feasible and practicable.    .   .   .

"(5)    The rate of speed of trains and cars shall
not exceed ten miles per hour in front of these prem-
ises; and all trees cut in consequence of this grant
shall be cut into cordwood and belong to second par-
ties.   .   .   .

"It is further agreed that upon the execution of
this agreement, and deposit of said sum of money
[$10,000 stipulated to be deposited in a bank] the first
party shall have the right to immediately, or at any
time thereafter begin the necessary work to con-
struct said railway in front of said premises,

and this agreement shall be made a decree of the chancery court of Davidson county, Tennessee, in the cause of James E. Caldwell v. Nashville Interurban Railroad Company and others, and all the parties shall join in a request to the chancellor of the chancery court to dissolve the injunction heretofore granted in this case. . . . And the conditions upon which said grants are made are to be binding perpetually.

"And upon consideration thereof, it is ordered that they [two agreements between the parties, both of which are set out] be and hereby are made the decree of the court; and

"That the complainant recover of the defendant the costs of this cause, for which execution will issue, as at law; and

"That this cause be retired from the docket with leave to reinstate the same upon application of either party as by said stipulation is provided."

The specific matter which is charged against the defendants in the petition for contempt is that they are running trains in front of the petitioner's premises in willful violation of the fifth section of the compromise agreement and decree; that is, that the trains of defendant railway are constantly running in excess of ten miles per hour in front of these premises.

In the view which we have taken of the case, it is not necessary to pursue the arguments of learned counsel, nor to review the numerous authorities cited, because we think our position can be made clear by reference to a few fundamental principles of law and

practice governing the issuance of the writ of injunction. This writ is an extraordinary one, and never issues as of course. It can only issue upon the fiat of a judge or chancellor authorized by law to award it, and only then upon compliance with certain prerequisites prescribed by the statutes. With rare exceptions, the writ can only issue upon special application and special prayer therefor. A final decree *ipso facto* dissolves a temporary injunction, and a perpetual injunction does not arise from a final decree, unless it is specially awarded.

Applying these well-settled principles to the case in hand, it will be obesrved that the parties agreed to dissolve the temporary injunction, both expressly and by implication arising out of the terms of the compromise settlement. What is meant is that the compromise settlement expressly authorizes the railroad company to do all of the things which it was inhibited from doing by the temporary injunction, and it also expressly provides "that all the parties shall join in a request to the chancellor of the chancery court to dissolve the injunction heretofore granted in this case." While it is true that the agreement provides that "the conditions upon which said grant is made are to be binding perpetually," it does not provide that the defendant is perpetually enjoined from violating the agreement, nor does it award to the complainant the extraordinary process of injunction to enforce the performance of the decree. It is argued by the defendants that the agreement does not have the pro-

bative force of a decree, because it is merely an agreement of the parties, and is not a judicial sentence, notwithstanding that it was entered upon the minutes of the court. However, this may be, we think it is true that the agreement, whether considered as such, or as the decree of the court does not purport to do more than to fix the rights of the parties. For this purpose it is binding upon all who consented to it. But as stated, it does not assume to provide a remedy for its enforcement, and much less the extraordinary remedy of injunction. We express no opinion upon the question of whether the parties could agree to enforce their contracts by the writ of injunction without the express approval and adjudication of the chancellor. The complainant's remedy to enforce the agreement may be by injunction, but, before the defendants can be punished for contempt of this extraordinary writ, the writ itself must be specially awarded.

The demurrer is sustained, and the petition is dismissed.